## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Janice Hustvet,                                     Case Type: Employment

          Plaintiff,

v.                                                  **COMPLAINT**
                                                    **JURY TRIAL DEMANDED**
Allina Health System,

          Defendant.                      Court File No.

---

Plaintiff, by her attorneys Fabian May & Anderson, PLLP, brings this action for damages and other legal and equitable relief for Defendant's violations of law. Plaintiff states the following as her claims against Defendant:

### JURISDICTION AND VENUE

1.      This action arises under Title I of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, et seq., as amended by the Americans with Disabilities Act Amendments Act of 2008 ("ADAAA"). Therefore, this court has original jurisdiction to hear this complaint and to adjudicate the claims stated herein under Title 28 U.S.C. §§ 1331-32.

2.      Plaintiff further invokes the supplemental jurisdiction of this Court to consider claims under state law. This Court has supplemental jurisdiction under Title 28 U.S.C. § 1367(a) to adjudicate Plaintiff's state law claims.

3.      The unlawful practices described hereinafter have been committed in the District of Minnesota, the employment records relevant to those practices are, upon

information and belief, maintained and administered at the offices of Defendant in the district of Minnesota, and Defendant does substantial business within Minnesota.

## PARTIES

4.     Plaintiff Janice Hustvet (hereinafter "Plaintiff" or "Hustvet") is an individual who resides in the Shoreview, County of Ramsey, State of Minnesota.

5.     Defendant Allina Health System (hereinafter "Defendant" or "Allina") is a Minnesota non-profit corporation whose registered office address is 2925 Chicago Ave., Mail Route 10905, Minneapolis, MN 55407.

## FACTS COMMON TO ALL COUNTS

6.     Plaintiff successfully worked at Courage Center as an Independent Living Skills Specialist for 15 ½ years. During that time she never needed to use a respirator in her job and never had to have a Measles Mumps or Rubella vaccine or mantoux testing to successfully perform her job duties.

7.     On May 2, 2013, Courage Center sent Plaintiff a letter stating that they were merging with Sister Kenny Rehabilitation Institute, part of Allina Health System, on June 1, 2013. The letter and attached forms indicated that Plaintiff "cannot work for Allina Health" until she had completed a health screen, which would include testing and immunizations for tuberculosis, chicken pox and mumps, measles and rubella, as well as completion of the following detailed medical and health-related forms: (1) Pre-placement assessment; (2) Infectious Disease and Immunization Tracking; (3) Respirator Medical Evaluation Questionnaire; and (4) Hepatitis B Vaccination Forms.

8.     The Respirator Medical Evaluation Questionnaire form asked a series of questions about potential disabilities and health conditions related to respirator use. For example, it asked about seizure history, medications, diabetes, allergies, claustrophobia, sense of smell, asthma, pulmonary or lung disorders, emphysema, tuberculosis, lung cancer, heartburn or indigestion, stroke, heart attack, angina, swelling in the feet or legs, heart arrhythmia, high blood pressure, tightness or pain in the chest, eye or skin irritations, allergies or rashes, anxiety, weakness or fatigue, and a series of other potential health issues or disabilities.

9.     Plaintiff consulted her supervisor about the Respirator Medical Evaluation Questionnaire. Plaintiff's supervisor informed Plaintiff that she had spoken with Defendant's Human Resources ("HR") Department regarding Plaintiff's job responsibilities, and that HR had told her it was fine to write "N.A." on the Respirator Medical Evaluation Questionnaire since she would not be using a respirator for her job.

10.     Plaintiff returned the forms to Defendant on May 13, 2013.

11.     Plaintiff wrote "N.A." on the top of the Allina Respirator Medical Evaluation Questionnaire, in the section asking for details regarding her medical history, because she would not be using a respirator for her job.

12.     On May 13, 2013, Plaintiff also received a mass email sent to a large number of employees requiring them all to attend a mandatory blood draw that Defendant required as a part of the health screening. Approximately 590 people were required to attend a scheduled blood draw to be hired by Defendant on May 14, 20. and 21, 2013.

13.     On May 20, 2013, Defendant drew Plaintiff's blood.

14.     On May 29, 2013, Defendant told Plaintiff that an "MMR Clinic" would be completed at Courage Center, and that she would need to call to schedule a time for the Measles Mumps and Rubella ("MMR") vaccine.

15.     On May 30, 2013, Plaintiff called Allina Occupational Health office and informed them that she had severe cases of the measles and mumps in the past, had been advised by her physician that she could not take the MMR vaccine, and also that she had severe chemical sensitivities.

16.     Plaintiff explained that if she were to take the MMR vaccine, she could become severely ill and be substantially limited in several major life activities.

17.     Plaintiff is substantially limited in her major bodily function of her immune system.

18.     On June 1, 2013, Courage Center merged with Sister Kenny Rehabilitation Institute, part of Allina Health, to become Courage Kenny Rehabilitation Institute. Prior to that date, Defendant was not Plaintiff's employer, and she had not been formally offered a job with Defendant.

19.     During the first week of June 2013, Plaintiff called Defendant's Employee Health Services ("EHS") and at that time Defendant informed her that she would not need the mumps or measles vaccine, but only the rubella vaccine. Plaintiff explained to multiple EHS representatives on that day that she could not take the vaccine because there is no such thing as a rubella-only vaccine, and that the measles and mumps vaccine would cause her serious health problems. Defendant said it would "get back to" Plaintiff, but failed to do so.

20.    On July 1, 2013, Plaintiff called Defendant again. The representative Plaintiff spoke with was extremely rude when Plaintiff explained why she was unable to take the vaccine.

21.    The Director of Health Services informed Plaintiff that she was required to complete the vaccine by the end of the next day as well as submit the full respirator form, and that there would be no appeal process for that decision.

22.    Plaintiff repeatedly asked for the reasonable accommodation of not requiring her to complete the respirator form or obtain the MMR vaccine, and explained her physician's instructions and the fact that she could become extremely ill if she had the vaccine.

23.    Defendant became progressively more aggressive with its demands for Plaintiff to complete the respirator form and obtain the MMR vaccine, until it finally informed her that she would be terminated if she did not comply.

24.    On July 9, 2013 Plaintiff received an email from HR stating that unless she received the MMR vaccine by the next day, she would be "voluntarily" terminating her position.

25.    Defendant involuntarily terminated Plaintiff's position on July 10, 2013 because she was unable to get the MMR vaccine, Defendant refused to provide her with reasonable accommodations, and because she opposed the unlawful policy of requiring her to get an MMR vaccine and complete a respirator form which had nothing to do with her job.

## CAUSES OF ACTION

## COUNT I

**Disability Discrimination in Violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.**

26.     By reference hereto, Plaintiff incorporates the above paragraphs of her Complaint.

27.     The Americans with Disabilities Act ("ADA") states in relevant part:  "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, . . . and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

28.     The term "discriminate against a qualified individual on the basis of disability" includes:

   a. "utilizing standards, criteria, or methods of administration . . . that have the effect of discrimination on the basis of disability";

   b. "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee . . ."

   c. "denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need . . . to make reasonable accommodation to the physical . . . impairments o the employee or applicant"; and

d. "using qualification standards, employment tests or other selection criteria that screen out or tend to screen out an individual with a disability or a class of individuals with disabilities unless the standard, test or other selection criteria, as used by the covered entity, is shown to be job-related for the position in question and is consistent with business necessity." 42 U.S.C. § 12112(b).

29. Moreover, under the ADA, a "covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity." 42 U.S.C. § 12112(d)(4).

30. The ADA further states that employers may not inquire into the disability status or medical history of job applicants other than "inquiries into the ability of an applicant to perform job-related functions." 42 U.S.C. § 12112(d)(2).

31. Defendant is a "covered entity" within the meaning of the Americans with Disabilities Act, 42 U.S.C. § 12111(2), and Plaintiff is disabled as defined in § 12102(1) and is a "qualified individual" as defined in § 12111(8).

32. Defendant's conduct constitutes a violation of 42 U.S.C. § 12101 et seq.

33. As a direct result of Defendant's conduct, Plaintiff has suffered the loss of past and future income, mental anguish, emotional distress, loss of benefits, and other damages in an amount in excess of $75,000.

## COUNT II

**Disability Discrimination in Violation of the Minnesota Human Rights Act, Minn. Stat. § 363A.01, et seq.**

34.     By reference hereto, Plaintiff incorporates the above paragraphs of her Complaint.

35.     During all relevant times herein, Defendant was an "employer" as defined in Minn. Stat. § 363A.03, subd. 16. Plaintiff is a "qualified disabled person" as defined in Minn. Stat. § 363A.03, subd. 36.

36.     The Minnesota Human Rights Act ("MHRA") states in relevant part: "[I]t is an unfair employment practice for an employer, because of  . . . disability . . . to . . . discharge an employee; or  . . . discriminate against a person with respect to hiring, tenure, compensation, terms upgrading, conditions, facilities, or privileges of employment." Minn. Stat. § 363A.08, subd. 2.

37.     The MHRA further states: "[I]t is an unfair employment practice for an employer . . . not to make a reasonable accommodation to the known disability of a qualified disabled person . . ." Minn. Stat. § 363A.08, subd. 6.

38.     It is also an unfair employment practice for an employer to request a person provide a medical history if that history does not test "only for essential job-related abilities." Minn. Stat. § 363A.20, subd. 8(a)(1).

39.     Defendant, by its conduct, violated Minn. Stat. § 363A.01, et seq.

40.     As a direct result of Defendant's conduct, Plaintiff has suffered the loss of past and future income, mental anguish, emotional distress, loss of benefits, and other damages in an amount in excess of $75,000.

## COUNT III

### Retaliation in Violation of the Americans with Disabilities Act, 42 U.S.C. § 12101, <u>et seq.</u>

41.     By reference hereto, Plaintiff incorporates the above paragraphs of her Complaint.

42.     The Americans with Disabilities Act provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a).

43.     The ADA also declares, "It shall be unlawful to coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of . . . her having exercised or enjoyed . . . any right granted or protected by this chapter." 42 U.S.C. § 12203(b).

44.     By its conduct set forth above, Defendant violated 42 U.S.C. § 12203(a) and 42 U.S.C. § 12203(b).

45.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered loss of income, emotional distress, and other damages in an amount in excess of $75,000.00.

## COUNT IV

## Reprisal in Violation of the Minnesota Human Rights Act, Minn. Stat. § 363A.01, <u>et seq.</u>

46.     By reference hereto, Plaintiff incorporates the above paragraphs of her Complaint.

47.     The MHRA provides that it is an "unfair discriminatory practice for any individual . . . to intentionally engage in any reprisal against any person because that person . . . opposed a practice forbidden under this chapter or has filed a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter . . ." Minn. Stat. § 363A.15.

48.     By its conduct set forth above, Defendant violated Minn. Stat. § 363A.15.

49.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and continues to suffer loss of income, emotional distress, and other damages in an amount in excess of $75,000.00.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Janice Hustvet prays for judgment against Defendant Allina Health System and for the following relief:

A. For compensatory damages, damages for loss of income and benefits, past and future, emotional distress, past and future, and other financial and emotional losses, all in an amount in excess of $75,000.

B. For all relief available for Defendant's violations of 42 U.S.C. § 12101 <u>et seq.</u>;

C. For all relief available for Defendant's violations of Minn. Stat. § 363A.01, <u>et seq.</u>;

D.  For punitive damages;

E.  For civil penalties;

F.  For her costs, disbursements, and attorney's fees; and

G.  For such other and further relief as the court deems just and equitable under the circumstances.

**FABIAN MAY & ANDERSON, PLLP**

Dated:  March 03, 2016            *s/Adrianna Shannon*
Adrianna H. Shannon, #0387799
Emma R. Denny, #0395334
1625 Medical Arts Building
825 Nicollet Mall
Minneapolis, MN 55402
(612) 353-3340
ashannon@fmalawyers.com
edenny@fmalawyers.com

**ATTORNEYS FOR PLAINTIFF**