UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

JANICE HUSTVET,

     Plaintiff,

  v.                                                                          Case No. 16-CV-551 (JNE/HB)
                                                                   **ORDER**

ALLINA HEALTH SYSTEM,

     Defendant.

Plaintiff Janice Hustvet brings discrimination, unlawful inquiry, and retaliation claims against Defendant Allina Health System under the Americans with Disabilities Act ("ADA") and the Minnesota Human Rights Act ("MHRA"), primarily arising from Allina's decision to terminate Hustvet for failing to fulfill a job requirement that she have immunity to rubella. Both Parties moved for summary judgment. (*See* Dkt. Nos. 25, 46.) Allina also moved to exclude the testimony of Hustvet's expert witness. (*See* Dkt. No. 38.) For the reasons that follow, the Court denies Hustvet's motion and grants summary judgment in Allina's favor on all claims. The Court denies Allina's motion to exclude as moot.

## I.  STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). To support an assertion that a fact cannot be or is genuinely disputed, a party must cite "to particular parts of materials in the record," show "that the materials cited do not establish the absence or presence of a genuine dispute," or show "that an adverse party cannot produce admissible

1

evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)-(B). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). In determining whether summary judgment is appropriate, a court views the record and all justifiable inferences in favor of the non-movant. *Liberty Lobby,* 477 U.S. at 255.

## II. BACKGROUND

Hustvet worked for Courage Center, out of its Golden Valley campus, as an Independent Living Specialist ("ILS") for several years. (*See, e.g.*, Compl. ¶ 6, Dkt. No. 1.) In May 2013, Courage Center announced it would be merging with Sister Kenny Rehabilitation Institute, part of Allina, on June 1, 2013. (*Id.* ¶ 7.) As a condition of continued employment, Allina required all ILSs to complete a health screen, which, among other things, included testing for immunity to certain communicable diseases and a "Respirator Medical Evaluation" ("RME"). (*See id.* ¶¶ 7-8.) The RME, which is based on OSHA standard forms, asked questions about potential health conditions directed at evaluating safe respirator fit and use. (*See* Dkt. No. 28-10.)

Testing revealed that Hustvet had immunity to mumps, measles, and varicella (chickenpox), but that she lacked immunity to rubella. (*See* Dkt. No. 29.) Hustvet did not complete the RME and instead wrote "N.A." on the form because her supervisor told Hustvet that the form did not pertain to her position as an ILS. (*See* Deposition of Janice Hustvet ("Hustvet Dep.") 185:17-23, Dkt. No. 66.) Allina informed Hustvet that she would need to submit a full RME and develop immunity to rubella by taking a Mumps, Measles, Rubella ("MMR") vaccine. (*See* Dkt. No. 28-13 at 3-4.) Hustvet did not comply with either request, but later stated she was willing to complete the RME, despite her feeling that it was invasive and unnecessary. (*See* Hustvet Dep. 66:10-16, 118:3-6, 140:2-5, 170:10-15, 186:15-25, 214:6-9 216:25-2; Deposition of Heather Lindblom ("Lindblom Dep.") 184:13-19, Dkt. No. 28-2; Dkt.

2

No. 28-13 at 3.) However, Hustvet never completed the RME, nor did she develop immunity to rubella. (*See* Dkt. No. 28-13 at 1.)

Hustvet told Allina that she was concerned about taking the MMR vaccine because her "health is of the utmost concern" and because she "had severe cases of mumps and measles—the MM part of the MMR." (*See id.* at 3.) She also stated that she has "many allergies and chemical sensitivities," such that she needed to limit her "exposure." (*Id.*; *see* Hustvet Dep. 76:7-77:5, 82:9-21.) Based on these factors, she concluded that "[i]t would be unwise and unhealthy to expose [her]self to those unneeded parts of the vaccine." (Dkt. No. 28-13 at 3.) She offered to take a rubella-only vaccine instead of the MMR vaccine. (*See id.* at 2.) However, a rubella-only vaccine was not available in the U.S. (*See id.* at 1; Dkt. No. 28-19 at 20.)

Allina's immunization policy applies to all employees who have patient or client contact, regardless of location or job title. (*See* Dkt. Nos. 28-9 at 1-2, 28-13 at 4.) The policy aligns with the CDC's recommendation that all healthcare professionals[1] with direct patient contact have immunity to mumps, measles, and rubella. (*See* Dkt. No. 28-19 at 4, 20.) In her position as an ILS, Hustvet worked one-on-one with clients in their homes, helping them with everyday chores and skills learning. (*See* Hustvet Dep.71:2-25.) Her clients were fragile and immuno-compromised, and they received regular assistance and medical care. (*Id.* at 73:9-20; 74:8-11.) Hustvet accompanied clients to doctors' appointments. (Deposition of Cynthia Guddal ("Guddal Dep.") 13:17-24, Dkt. No. 28-3.) She also periodically visited the Courage Center's Golden Valley campus for meetings. (*See* Hustvet Dep. 159:12-23.) That campus includes inpatient rehabilitation clinics and other fitness facilities. (*See* Lindblom Dep. 15:16-24, 25:17-26:18.)

---

[1] "Healthcare professionals" include those who are potentially exposed to infectious agents that can be transmitted to and from other professionals and patients. (*See* Dkt. No. 28-19 at 4.)

When attending meetings in the building, Hustvet came into close proximity with rehabilitation clinics and their patients. (Guddal Dep. 21:20-22:24, 24:14-19.)

On July 9, 2013, Allina terminated Hustvet's employment due to her failure to comply with immunity requirements and to complete the RME. (*See* Dkt. No. 28-13 at 1.)

## III. ANALYSIS

### A. Disability Discrimination

Hustvet brings disability discrimination claims under the ADA and MHRA against Allina for utilizing discriminatory qualification standards, not making reasonable accommodations, and denying employment on the basis of disability. (*See* Compl. ¶¶ 28, 36-37.)

Claims for disability discrimination in violation of the ADA or MHRA are analyzed under the *McDonnell Douglas* burden-shifting framework. *See Dovenmuehler v. St. Cloud Hosp.*, 509 F.3d 435, 439 & n.4 (8th Cir. 2007). Under this framework, Hustvet must show that (1) she has a disability within the meaning of the ADA or MHRA, (2) she is qualified to perform the essential functions of her job, with or without reasonable accommodation, and (3) she suffered an adverse employment action because of her disability. *Id.* at 439. If Hustvet meets her burden of making out this prima facie case, the burden shifts to Allina to articulate a legitimate, non-discriminatory reason for the adverse action. *See id.* If it does so, Hustvet must show that Allina's reason is pretext for discrimination. *See id.*

*1. Disability*

To demonstrate that she is disabled within the meaning of the ADA and MHRA, Hustvet must show that she: (1) has a physical, sensory, or mental impairment which substantially limits one or more major life activities, (2) has a record of such an impairment, or (3) is regarded as having such an impairment. *See* 42 U.S.C. § 12102(1); Minn. Stat. § 363A.03, subd. 12 (2017);

4

*Dovenmuehler*, 509 F.3d at 439. Relevant to this case, major life activities include caring for oneself, performing manual tasks, eating, concentrating, interacting with others, and working. *See* § 12102(2)(A); 29 C.F.R. § 1630.2(i)(1)(i). They also include the operation of major bodily functions, such as the functions of the immune and other systems. *See* § 12102(2)(B); § 1630.2(i)(1)(ii).

A limitation must be "substantial." *See* § 12102(1)(A); § 363A.03, subd. 12.[2] That is, it must substantially limit the plaintiff's ability to perform a major life activity "as compared to most people in the general population." § 1630.2(j)(1)(ii). Although "[a]n impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting . . . . not every impairment will constitute a disability." *Id.* Whether a major life activity is substantially limiting is a fact-specific inquiry. *Land v. Baptist Med. Ctr.*, 164 F.3d 423, 425 (8th Cir. 1999).

Hustvet does not argue or put forth evidence showing that Allina regarded her as having a disability. Instead, Hustvet asserts that she is actually disabled, as shown by her impairments and/or her record of impairments. (*See* Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment ("D.S.J. Pl. Br.") 10-11, 34-37, Dkt. No. 77; Plaintiff's

---

[2] The MHRA defines disability with respect to impairments that "materially," rather than "substantially," limit major life activities. *Compare* Minn. Stat. § 363A.03, subd. 12 (2017), *with* 42 U.S.C. § 12102(1)(A). The Minnesota Supreme Court has held that the MHRA's standard is "less stringent" than the ADA standard, *see Sigurdson v. Carl Bolander & Sons Co.*, 532 N.W.2d 225, 228 (Minn. 1995), but it is unclear how the standards differ, *see Kirkeberg v. Can. Pac. Ry.*, 619 F.3d 898, 907 (8th Cir. 2010). In addition, since the Minnesota Supreme Court's decision distinguishing the standards, Congress amended the ADA by lowering the "substantially" standard in 2008. *See* § 12102(4)(B) (incorporating ADA Amendments Act of 2008, Pub. L. 110–325, § 2, 122 Stat 3553). Because the standards now appear to align, and because Hustvet does not make any argument that she is materially (as opposed to substantially) limited in her performance of major life activities, the Court analyzes her claims under the amended ADA standard. *See Knutson v. Schwan's Home Serv., Inc.*, 870 F. Supp. 2d 685, 689 n.6 (D. Minn. 2012), *aff'd,* 711 F.3d 911 (8th Cir. 2013).

Memorandum in Support of Her Motion for Summary Judgment ("P.S.J. Pl. Br.") 8-9, Dkt. No. 61.) She argues that her conditions limited her performance of major life activities (such as breathing, eating, caring for oneself, cleaning, and socializing) and major bodily functions (including the functioning of her immune, digestive, neurological, respiratory, circulatory, cardiovascular, and musculoskeletal systems). (*See* D.S.J. Pl. Br. 11, 35.)

There is insufficient evidence in the record to support the conclusion that Hustvet's conditions substantially limit her ability to perform major life activities. For example, the record shows that Hustvet has garden-variety allergies to various foods, grass, pets, trees, etc. (*See* Hustvet Dep. 82:25-86:14.) She has "typical" allergic reactions, such as "itchy runny eyes and nose." (*Id.* at 87:6-9.) She has never been prescribed an Epi-Pen. (*See id.* at 87:18-19.) She is generally able to breath, eat, care for herself, clean, and socialize, but sometimes she must avoid certain fragrances and chemicals by relocating herself farther away from the source of an offending emanation. (*See, e.g.*, *id.* at 165:12-167:11.) She has never been hospitalized due to any allergic or chemical reactions. (*Id.* at 103:16-104:2, 176:10-12.)

In her deposition, Hustvet claimed that her chemical sensitivities and allergies derive from an immune system disability. (*See id.* at 109:5-19.) However, the record does not show that any doctor has diagnosed Hustvet with an immune system disability. (*See, e.g.*, *id.* at 110:20-23; Deposition of Dr. Tammy Chiesa ("Chiesa Dep.") 17:14-16, 62:13-16, Dkt. No. 71; Dkt. No. 32.) Allergies and sensitivities may be indicative of an immune system disorder, (*see* Chiesa Dep. 74:11-75:3), but Hustvet has not shown that these conditions substantially impaired the functioning of her immune system, *see Land*, 164 F.3d at 425 (finding that a peanut allergy did not render the plaintiff disabled); *Robinson v. Morgan Stanley & Co. Inc.*, 269 F. App'x 603, 607–08 (7th Cir. 2008) (unpublished) (similar, perfumes and fragrances); *Gallagher v. Sunrise*

*Assisted Living of Haverford*, 268 F. Supp. 2d 436, 440-41 (E.D. Pa. 2003) (similar, pet allergy).[3] Moreover, it is questionable whether Hustvet could demonstrate such an impairment without medical evidence documenting impairment to her immune system's functioning. *See Robinson*, 269 F. App'x at 607; *Grabin v. Marymount Manhattan Coll.*, No. 12-CV-3591 (KPF), 2015 WL 4040823, at *11-14 (S.D.N.Y. July 2, 2015), *aff'd,* 659 F. App'x 7 (2d Cir. 2016). A reasonable jury could not find that Hustvet is disabled on the basis of her allergies and chemical sensitivities or because she has an immune system disorder.

The closest Hustvet comes to demonstrating the existence of a disability is her assertion that she suffers from a seizure disorder. The record indicates that Hustvet has a remote history of seizures. (*See, e.g.*, Chiesa Dep. 49:4-8; Dkt. Nos. 32 at 3, 30, 50 at 1, 51 at 1, 60 at 1.) This may constitute a substantial limitation on the functioning of the neurological system. *See* § 1630.2(j)(3)(iii) (stating that epilepsy substantially limits neurological function). But the record does not sufficiently disclose how her seizures substantially limit her ability to perform major life activities. Hustvet manages her seizures with a prescription medication,[4] but when the seizures occur, the record only shows that they cause Hustvet to feel disoriented and as if she is "fading away" for one to two minutes (Dkt. No. 28-23 at 2.) She does not lose consciousness. (*Id.*) The record does not otherwise reveal the extent, frequency, or severity of her seizures. Given this lack of evidence, Hustvet fails to meet her burden of showing she is disabled due to conditions that substantially limit her performance of major life activities. *See Brunke v. Goodyear Tire & Rubber Co.*, 344 F.3d 819, 821-22 (8th Cir. 2003); *Zirpel v. Toshiba Am. Info. Sys., Inc.*, 111 F.3d 80, 81 (8th Cir. 1997); *Chappell v. Butterfield-Odin Sch. Dist. No. 836*, 673

---

[3] The Court recognizes that these and other cited cases apply the pre-amendment ADA standards, but the Court still finds the cases persuasive in view of the current standards.

[4] The Court does not consider the "ameliorative effects of mitigating measures such as . . . medication" when evaluating whether Hustvet is disabled. 42 U.S.C. § 12102(4)(E)(i).

F. Supp. 2d 818, 836-37 (D. Minn. 2009); *see also E.E.O.C. v. Sara Lee Corp.*, 237 F.3d 349, 353 (4th Cir. 2001) (finding that a "milder form of epilepsy imposed no substantial limitation" on major life activities). Based on the record, a reasonable jury could not find for Hustvet on the issue of disability.

2. *Qualified*

Although the Court determines that Hustvet fails to show that she is disabled within the meaning of the ADA or MHRA, the Court will continue to analyze her prima facie case.

"The determination of qualification takes two parts: (1) whether the individual meets the necessary prerequisites for the job, such as education, experience, training, and the like; and (2) whether the individual can perform the essential job functions, with or without reasonable accommodation." *Benson v. Nw. Airlines, Inc.,* 62 F.3d 1108, 1111-12 (8th Cir.1995); *see* 42 U.S.C. § 12111(8); § 1630.2(m). The first step focuses on "credentials." *Walz v. Ameriprise Fin., Inc.*, 779 F.3d 842, 845 (8th Cir. 2015). The second step focuses on "the fundamental job duties of the employment position." § 1630.2(n)(1).

Allina argues that Hustvet was not qualified because of the risk that Hustvet posed to clients due to her non-vaccinated status. (*See* Defendant's Memorandum in Support of Its Motion for Summary Judgment ("D.S.J. Def. Br.") 23, 30, Dkt. No. 27.) Setting aside the question of whether Hustvet was qualified to work as an ILS despite safety concerns, in all other respects, Hustvet had the education, experience, training, and credentials required of an ILS, as demonstrated by her long history of employment as an ILS and short-lived employment with Allina. (*See* Hustvet Dep. 19:5-7, 130:20-131:18, 214:6-9.) Apart from safety concerns, Hustvet could perform the fundamental duties of the ILS position. The Court assumes, without deciding, that Hustvet is therefore qualified for the purpose of making out her prima facie case.

8

## 3. Causation and Adverse Action

A plaintiff alleging discrimination must show that her employer knew about the limitations serving as the basis for a purported disability when making the challenged adverse decision. *See Tusing v. Des Moines Indep. Cmty. Sch. Dist.*, 639 F.3d 507, 519 (8th Cir. 2011) (citing *Kozisek v. Cty. of Seward*, 539 F.3d 930, 936 (8th Cir. 2008)); *Miller v. Nat'l Cas. Co.*, 61 F.3d 627, 629 (8th Cir. 1995); *see also* 29 C.F.R. § 1630.9(a) ("It is unlawful for a covered entity not to make reasonable accommodation to the *known* physical or mental limitations of an otherwise qualified applicant or employee with a disability." (emphasis added)). In addition, a discrimination claim does not lie where there is no "causal connection between the major life activity that is limited and the accommodation sought." *Wood v. Crown Redi-Mix, Inc.*, 339 F.3d 682, 687 (8th Cir. 2003).

No reasonable jury could find that Allina's decision to terminate Hustvet or its alleged failure to accommodate resulted from Allina's knowledge of her disability. The only information Hustvet provided to Allina for why she did not want to develop immunity to rubella by taking the MMR vaccine was that she has allergies, chemical sensitivities, and a past history of severe cases of mumps and measles. (*See* Dkt. No. 28-13; Hustvet Dep. 76:3-77:5, 82:9-21.) None of these conditions is a contraindication or precaution[5] for the MMR vaccine, such that one condition would imply the presence of disability. (*See* Dkt. Nos. 74-3 at 10-11, 74-7 at 1-2, 6.) The record does not show that Hustvet elaborated on how her common conditions substantially impaired her life or that she previously disclosed any limitations arising from these conditions. (*See* Dkt. No. 28-13.) Hustvet did not follow Allina's policy of formally requesting an

---

[5] Contraindications and precautions are conditions under which a vaccine should not be administered. (*See* Dkt. No. 74-7 at 1.) The CDC notes that "certain conditions are commonly misperceived as contraindications" but "are not valid reasons to defer vaccinations." (*Id.*)

9

accommodation. (Lindblom Dep. 75:9-76:13.) And the record shows that Allina representatives did not consider Hustvet to be seeking an accommodation for or suffering from a disability. (*E.g.*, *id.* at 180:18-181:8, 182:16-19; Deposition of Cheryl Polipnick ("Polipnick Dep.") 47:24-48:8, Dkt. No. 28-5.) Even when viewing the record in a light most favorable to Hustvet, her brief expressions of concern over taking the MMR vaccine were not "so obviously manifestations of an underlying disability that it would be reasonable to infer that [her] employer actually knew of the disability." *Miller*, 61 F.3d at 630 (quoting *Hedberg v. Ind. Bell Tel. Co.*, 47 F.3d 928, 934 (7th Cir. 1995)); *see E.E.O.C. v. Convergys Customer Mgmt. Grp., Inc.*, 491 F.3d 790, 795 (8th Cir. 2007) ("A disabled employee must initiate the accommodation-seeking process by making [her] employer aware of the need for an accommodation. Additionally, the employee must provide relevant details of [her] disability and, if not obvious, the reason that [her] disability requires an accommodation." (citations omitted)); *Ruggiero v. Mount Nittany Med. Ctr.*, No. 4:16-CV-1996, 2017 WL 2080236, at *7 (M.D. Pa. May 15, 2017).[6]

Nor could any reasonable jury find that Hustvet's claimed limitations are causally related to Hustvet's concerns about taking the MMR vaccine. Severe allergies to components of the MMR vaccine, for example, are contraindications for the vaccine, but there is no evidence that Hustvet has severe allergies to any of the vaccine's components. (*See* Dkt. Nos. 74-3 at 10, 74-7 at 6.) Sensitivities to chemicals or a past history of severe cases of the underlying diseases included in the vaccine are not listed as contraindications or precautions. (*See id.*) Although Hustvet previously had negative reactions to certain vaccines, such as the flu vaccine (on one occasion) and the Tetanus, Diphteria, Pertussis ("Tdap") vaccine, (*see* Hustvet Dep. 151:23-

---

[6] Relatedly, Hustvet's assertion that Allina violated the ADA and MHRA by failing to engage in the "interactive process" fails because Allina did not receive adequate "notice that reasonable accommodation [was] requested." *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 953 (8th Cir. 1999).

152:8; Dkt. No. 32 at 1, 3, 10), no physician ever told Hustvet prior to her termination that she should not take the MMR vaccine, (*see* Hustvet Dep. 86:19-22, 88:4-7, 106:14-107:16, 171:11-17). Rather, Hustvet relied on her own uninformed intuitions and considered it "common knowledge" that the injection of unnecessary chemicals and vaccines would compromise her health, especially because she was already "chemically sensitive." (Dkt. No. 28-14.)

Hustvet says she was also concerned that the MMR vaccine would threaten her health because it contained live (attenuated) viruses, but she does not know if she has ever had a negative reaction to a vaccine because it contained live viruses. (*See* Hustvet Dep. 164:11-13, 170:20-171:10.) Hustvet received other live virus vaccinations (e.g., Zoster)[7] throughout her life and in the years leading up to her termination without incident. (*See, e.g.*, Dkt. Nos. 32 at 1, 5, 34 at 1.) She was also willing to take a rubella-only vaccine, but such a vaccine, like the MMR vaccine, presumably contains a live virus. (*See* Dkt. Nos. 28-13 at 2, 28-19 at 41.) And although live virus vaccines, like the MMR vaccine, carry an elevated seizure risk, a history of seizures is not an absolute contraindication.[8] (Chiesa Dep. 54:10-55:13.) Personal or family history of seizures is a precaution for the MMRV[9] vaccine, but not the MMR vaccine. (*See* Dkt. Nos. 74-3 at 10, 74-7 at 2.) Though the live virus in the MMR vaccine presents a "very small, but possible risk, of having a seizure," the CDC does not consider a past history of seizures to be a precaution

---

[7] *See Herpes Zoster Vaccination*, CDC, https://www.cdc.gov/vaccines/vpd/shingles/hcp/hcp-vax-recs.html (last visited Aug. 21, 2017) (noting that Zoster is a "live virus vaccine").

[8] Dr. Chisea did not sufficiently explain why, in writing a note supporting Hustvet's decision not to take the MMR vaccine after Allina terminated Hustvet, Dr. Chisea believes that "the risks versus potential benefits of the MMR vaccine are in fact greater." (Dkt. No. 31; *see* Chiesa Dep. 53:13-54:25.) Moreover, Dr. Chisea appears to lack specialized knowledge to make such a determination because she does not have specific expertise with regard to the immune system, allergies, vaccines, or infectious diseases relevant to this case. (*See* Chisea Dep. 56:10-16, 66:13-67:1, 77:23-78:2, 85:10-19.)

[9] The "V" in MMRV stands for "varicella," which is the medical term for chickenpox. *See Measles, Mumps, Rubella, and Varicella Vaccine*, CDC, https://www.cdc.gov/vaccinesafety/vaccines/mmrv-vaccine.html (last visited Aug. 21, 2017).

or contraindication for the vaccine. (*See* Chiesa Dep. 54:6-21; Dkt. Nos. 74-3 at 10-11, 74-7 at 1-2, 6.) Therefore, no reasonable jury could find a causal connection between Hustvet's claimed limitations and her concerns about taking the MMR vaccine as a safe avenue to develop immunity to rubella.

Lastly, Hustvet claims that Allina's policy requiring immunity to certain diseases is a per se violation of the ADA and MHRA because it is similar to "100% healed" policies. (*See* D.S.J. Pl. Br. 32-33.) "All courts that have examined the question . . . agree that a 100% rule is impermissible as to a disabled person." *Henderson v. Ardco, Inc.*, 247 F.3d 645, 653 (6th Cir. 2001) (emphasis omitted). However, per se violations in the form of 100% healed policies involve the context of workplace injury and subsequent return-to-work requests. *See McGregor v. Nat'l R.R. Passenger Corp.*, 187 F.3d 1113, 1116 (9th Cir. 1999) ("A '100% healed' or 'fully healed' policy discriminates against qualified individuals with disabilities because such a policy permits employers to substitute a determination of whether a qualified individual is '100% healed' from their injury for the required individual assessment whether the qualified individual is able to perform the essential functions of . . . her job either with or without accommodation."). Hustvet's case does not concern workplace injury or reinstatement, but rather a policy that applied to all similarly situated employees. As such, the existence of the policy was not a per se violation of the ADA or MHRA akin to a 100% healed policy. *See Patterson v. Illinois Dep't of Corr.*, 37 F. App'x 801, 804 (7th Cir. 2002) (unpublished) (holding that a testing requirement was not a "per se" violation because it applied to all employees, not only disabled employees).

In summary, Hustvet fails to make out a prima facie case of discrimination. There is no genuine dispute of material fact, based on the record, that Hustvet is not disabled within the meaning of the ADA or MHRA. There is also no genuine dispute of material fact that there is no

causal connection between Allina's knowledge of any of Hustvet's proffered limitations and its decision to terminate Hustvet for failure to develop immunity to rubella, nor a causal connection between Hustvet's claimed limitations and any failure to accommodate based on her concerns about taking the MMR vaccine. Because Hustvet fails to make out a prima facie case of discrimination, her discrimination claims fail as a matter of law, and Allina is entitled to summary judgment.

**B. Unlawful Inquiries**

The ADA and MHRA prohibit, in addition to discrimination, certain medical inquiries and examinations. *See* 42 U.S.C. § 12112(d); Minn. Stat. §§ 363A.08, subd. 4, 363A.20, subd. 8 (2017). Unlike discrimination claims, an employee need not actually be disabled to assert a claim for violations of the ADA's prohibitions on medical inquiries or examinations. *See Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007). However, Hustvet must still show that any prohibited inquiries caused tangible injury. *See Cossette v. Minn. Power & Light*, 188 F.3d 964, 970 (8th Cir. 1999); *see also* Minn. Stat. § 363A.28, subd. 1 (2017) ("Any person *aggrieved* by a violation of this chapter may bring a civil action as provided in section 363A.33, subdivision 1 . . . ." (emphasis added)); *Matter of Khan*, No. A16-0633, 2017 WL 1376379, at *3 (Minn. Ct. App. Mar. 20, 2017) (unpublished).

As already noted, Hustvet told Allina representatives that she was willing to complete the RME so long as she did not have to take the MMR vaccine. (*See* Hustvet Dep. 66:10-16, 118:3-6, 140:2-5, 170:10-15, 186:15-25, 214:6-9; Lindblom Dep. 184:13-19.) Although Allina cited the incomplete RME, in addition to Hustvet's failure to develop immunity to rubella by taking the MMR vaccine, as a reason for termination, (*see* Dkt. No. 28-13 at 1), the record clearly shows that Hustvet was willing to complete the RME and would have completed it had

13

Allina not required her to develop immunity to rubella. Due to her willingness to complete the RME, her failure to complete it did not cause her termination. Because Hustvet did not suffer any tangible injury as a result of not completing the RME—but, rather, because she did not develop immunity to rubella—her unlawful inquiry claims fail, and Allina is entitled to summary judgment.

## C. Retaliation/Reprisal

"The ADA prohibits discrimination against any individual who has opposed an unlawful act of discrimination, made a charge of discrimination, or participated in any manner in an investigation or proceeding under the ADA." *Mershon v. St. Louis Univ.*, 442 F.3d 1069, 1074 (8th Cir. 2006) (citing 42 U.S.C. § 12203(a)). The MHRA provides for a similar cause of action for reprisal. *See* Minn. Stat. § 363A.15 (2017). Hustvet contends that she proved retaliation using both direct and circumstantial evidence.

### 1. *Direct Evidence*

"Direct evidence of retaliation is evidence that demonstrates a specific link between a materially adverse action and the protected conduct, sufficient to support a finding by a reasonable fact finder that the harmful adverse-action was in retaliation for the protected conduct." *Lors v. Dean*, 746 F.3d 857, 865 (8th Cir. 2014) (citation omitted). Direct evidence shows strong causal proof and may include circumstantial evidence. *See id.*

Hustvet argues she engaged in protected conduct when she refused to complete the health screen, which she claims was unlawful. (*See* D.S.J. Pl. Br. 30; P.S.J. Pl. Br. 35-36.) She claims that her protected conduct entails: refusal to complete the RME and refusal to take the MMR vaccine. (*See* D.S.J. Pl. Br. 30; P.S.J. Pl. Br. 35-36.) Allina argues that there is no evidence demonstrating a link between statutorily protected conduct and termination; Allina only fired

14

Hustvet for failure to meet job requirements. (*See* Defendant's Reply Memorandum in Support of Its Motion for Summary Judgment ("D.S.J. Def. Reply Br.") 10, Dkt. No. 79; Defendant's Memorandum in Opposition to Plaintiff's Motion for Summary Judgment ("P.S.J. Def. Br.") 41-42, Dkt. No. 72.) Allina also points out that Hustvet was willing to complete the RME and otherwise develop immunity to rubella. (*See* D.S.J. Def. Reply Br. 11.)

First, as discussed above, Hustvet cannot claim that her failure to complete the RME is protected conduct because she was willing to complete the RME so long as she did not have to develop immunity to rubella by taking the MMR vaccine. *See* Part III.B. Even if it was protected conduct, the conduct did not cause her termination for the same reason.

Second, Hustvet cannot claim that refusal to take the MMR vaccine was protected conduct on the basis that the MMR vaccine was an impermissible job requirement because taking the MMR vaccine was not a job requirement. Even though Allina representatives may have spoken as if taking the MMR vaccine was a requirement, Allina only required Hustvet to have immunity to certain diseases, such as rubella. (*See* Dkt. No. 28-13.) Hustvet did not have immunity to rubella, so Allina requested that she take the MMR vaccine because the vaccine is a safe way to develop that immunity. (*See* Dkt. Nos. 28-13, 29; *see also* Dkt. No. 28-19 at 14, 17, 20 (noting that the MMR vaccine has an "excellent safety profile").) If Hustvet would have had immunity to rubella, Allina would not have asked her to take the MMR vaccine. (*See* Lindblom Dep. 181:25-182:3; Dkt. No. 29.) Thus, taking the MMR vaccine was not a job requirement. The record does not show that Hustvet opposed the immunity-to-rubella requirement. To the contrary, the record shows that Hustvet was willing to develop immunity to rubella by taking a

rubella-only vaccine. (*See* Dkt. No. 28-13 at 2.) Therefore, she fails to show that she engaged in protected conduct by objecting to the requirement that she have immunity to rubella.[10]

2. *Circumstantial Evidence*

Hustvet's circumstantial evidence case fares no better because under the *McDonnell Douglas* burden-shifting framework, she must still demonstrate that she engaged in protected conduct. *See Mershon*, 442 F.3d at 1074. But as already stated, she fails to show that she engaged in protected conduct.[11]

**D. Expert Witness**

Because the Court grants summary judgment in favor of Allina, the company's motions to exclude an expert witness's testimony are moot. *See Spineology, Inc. v. Wright Med. Tech., Inc.*, No. 15-CV-180 (JNE/FLN), 2017 WL 3172808, at *5 (D. Minn. July 25, 2017).

## IV. CONCLUSION

Based on the files, records, and proceedings herein, and for the reasons stated above, IT IS ORDERED THAT:

1. Defendant Allina Health System's motion for summary judgment [Dkt. No. 25] is GRANTED.

2. Defendant Allina Health System's motion to exclude an expert witness [Dkt. No. 38] is DENIED AS MOOT.

[continued on next page]

---

[10] To the extent Hustvet asserts retaliation related to a request for a reasonable accommodation to the immunity requirement, such a claim fails because, as stated above, Hustvet did not put Allina on notice that she requested or needed a reasonable accommodation. *See supra* note 6. In addition, even if Hustvet's concern about taking the MMR vaccine can be construed as a request for a reasonable accommodation, the record does not show that Allina terminated Hustvet because she requested an accommodation, but instead because Hustvet did not comply with its immunity requirement. *See Withers v. Johnson*, 763 F.3d 998, 1005 (8th Cir. 2014); *Hill v. Walker*, 737 F.3d 1209, 1219 (8th Cir. 2013).

[11] To the extent Hustvet brings coercion claims, such claims mirror the analysis for the retaliation claims and are not supported by the record.

3. Plaintiff Janice Hustvet's motion for summary judgment [Dkt. No. 46] is DENIED.

4. This action is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: August 22, 2017.

s/Joan N. Ericksen
JOAN N. ERICKSEN
United States District Judge